IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ABEL HERNANDEZ DIONOSIO,

      Petitioner,

v.                                      No. 2:26-cv-00453-DHU-DLM

PAMELA BONDI, United States Attorney General;
KRISTI NOEM, United States Secretary of Homeland
Security; and MARY DE ANDA-YBARRA, Acting
Field Office Director of Enforcement and Removal
Operations for El Paso (covering West Texas and New
Mexico),

      Respondents.

**ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS**

THIS MATTER is before the Court on Petitioner Abel Hernandez Dionosio's Amended

Petition for Writ of Habeas Corpus ("Habeas Petition"). Doc. 20.[1] Petitioner alleges that he has

been unlawfully detained without the opportunity for a bond hearing, in violation of the

Immigration and Nationality Act ("INA") and the Due Process Clause of the Fifth Amendment.

*Id.* ¶¶ 46-63. Petitioner asks this Court to order Respondents to release him on his own

recognizance, or in the alternative, order Respondents to set a reasonable bond. *Id.* at 1. Having

considered the parties' briefs and the relevant law, the Court **GRANTS IN PART** Petitioner

Abel Hernandez Dionosio's Petition for Writ of Habeas Corpus, and orders Respondents to

---

[1] Petitioner filed his Amended Petition for Writ of Habeas Corpus twice. *See* Docs. 14-1, 20. Because the two Habeas Petitions are identical, and to prevent confusion, the Court only refers to and cites to Doc. 20 throughout this Order.

1

provide Petitioner with a bond hearing before an Immigration Judge ("IJ") pursuant to 8 U.S.C. § 1226(a) within seven (7) days. [2]

## I.
## BACKGROUND

1. Petitioner Abel Hernandez Dionosio is a native and citizen of Mexico who first entered the United States without inspection in or about 2000. *Id.* ¶¶ 3, 18; Doc. 9-1 at 2. On October 9, 2000, Petitioner encountered immigration officials and voluntarily returned to Mexico. Doc. 9-1 at 2.

2. Petitioner reentered the United States sometime after October 9, 2000, and before 2001 without inspection. Doc. 20 ¶¶ 3, 18; Doc. 9 at 2.

3. Petitioner established a life in the United States. He moved to Florida in 2002. Doc. 20 ¶ 4. He married and had children. *Id.* ¶ 5.

4. On March 18, 2025, Petitioner was detained by Immigration and Customs Enforcement ("ICE") in Florida. Doc. 9-1 at 2.

5. Petitioner was issued a Notice to Appear and placed into removal proceedings. His Notice to Appear charged him as a noncitizen in the United States without being admitted or paroled. Doc. 20 ¶ 29; Doc. 9-2 at 1.

---

[2] On February 17, 2026, Petitioner also filed a Motion for Temporary Restraining Order ("TRO"). Doc. 2. The Court set a hearing on the Motion for February 23, 2026. Doc. 4. On February 23, 2026, the Court denied Petitioner's Motion after Petitioner's counsel failed to appear at the hearing and failed to request to appear remotely, but also granted Petitioner leave to re-file the Motion. Doc. 6. On March 2, 2026, Petitioner filed a Second Amended Motion for TRO (Doc. 13), which was later followed by a Third Amended Motion for TRO (Doc. 21), and a Fourth Amended Motion for TRO (Doc. 22). Because the Court is granting Petitioner relief in this Order, the Court **DENIES AS MOOT** Petitioner's Second Amended Motion for TRO (Doc. 13), Third Amended Motion for TRO (Doc. 21), and Fourth Amended Motion for TRO (Doc. 22).

6. Petitioner was eventually transferred to the Otero County Processing Center in Chaparral, New Mexico, where he remains detained. Doc. 20 ¶ 19.

7. While at Otero, Petitioner submitted a bond redetermination request. *Id.* at 24.

8. On June 2, 2025, Petitioner had a bond hearing before the Otero Immigration Court, IJ Samuel Williams ("IJ Williams"). *Id.* at 24-25. IJ Williams denied bond, finding that Petitioner was a flight risk. *Id.* at 24.

9. On November 25, 2025, Petitioner had his individual hearing before the Otero Immigration Court, IJ Williams. *Id.* at 27-30. IJ Williams granted Petitioner Cancellation of Removal. *Id.* at 28. The Government reserved its right to appeal the Cancellation of Removal Order, which was due by December 26, 2025. *Id.* at 30. The Government appealed on December 8, 2025. Doc. 9-13 at 1.

10. The Government also filed a Motion to Reconsider the Cancellation of Removal Order, which IJ Williams denied on December 18, 2025. Doc. 9-14.

11. Petitioner submitted a second bond redetermination request. Doc. 20 at 26.

12. On February 6, 2026, Petitioner had a bond hearing before the Otero Immigration Court, IJ Brock Taylor ("IJ Taylor"). *Id.* at 26. IJ Taylor denied Petitioner bond finding that he lacked jurisdiction to consider bond pursuant to *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025). *Id.*

On February 17, 2026, Petitioner filed a Petition for Writ of Habeas Corpus, and on March 6, 2026, filed an Amended Petition for Writ of Habeas Corpus. *See* Docs. 1, 20. In his Amended Petition, Petitioner contends that he should be subject to ICE's general detention authority under 8 U.S.C. § 1226(a) because he was not seeking entry into the United States when he was detained, and, instead, was already present in the United States. Doc. 20 ¶¶ 14, 53.

Petitioner further alleges that, under a July 2025 ICE policy and the September 2025 Board of Immigration Appeals' ("BIA") decision, *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), he was erroneously classified as an "applicant for admission" subject to mandatory detention under 8 U.S.C. § 1225. *Id.* ¶¶ 8-10, 18. Petitioner argues that he is entitled to a bond hearing under § 1226(a) and that Respondents' denial of such a hearing deprives him of his rights without due process of law. *Id.* ¶¶ 14, 53, 55-63. Petitioner also argues that he is entitled to release because he was previously released on bond. *Id.* ¶ 56. The Petition asks this Court to order Respondents to release him on his own recognizance, or in the alternative, order Respondents to set a reasonable bond. *Id.* at 1.

On February 26, 2026, USA Respondents filed their response to the Petition for Writ of Habeas Corpus, and on March 6, 2026, filed their response to the Amended Petition for Writ of Habeas Corpus.[3] *See* Docs. 9, 18. Warden Castro joined the response. Doc. 12. In their response, Respondents do not dispute the facts laid out in the Habeas Petition. *See* Doc. 9 at 2-4. The Government also acknowledges that Petitioner is subject to the detention provisions of § 1225 or § 1226. *Id.* at 4. Relying on the BIA's decision in *Matter of Yajure Hurtado*, Respondents' position is that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b) because he was present in the United States without being admitted or paroled. *Id.* However, Respondents also acknowledge that this Court reached the opposite conclusion in *Requejo Roman v. Castro*, -- F.Supp.3d--, 2026 WL 125681 (D.N.M. 2026). *Id.* Respondents also concede that the facts of this case "are not materially distinguishable [from *Requejo Roman*] for purposes of the Court's decision on the legal issue of which statutory provision authorizes Petitioner's detention." *Id.* at 5.

---

[3] Respondents' response to Petitioner's Amended Petition for Writ of Habeas Corpus directs the Court to their original response. Doc. 18 at 1. The Court, therefore, only cites Doc. 9 throughout this Order.

## II.
## LEGAL STANDARDS

Habeas relief is available when a person "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Petitioner seeks habeas relief, arguing that he is being detained in violation of the INA and the Due Process Clause.

The Due Process Clause of the Fifth Amendment prohibits the government from depriving any person of liberty without due process of law. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690, 121 S.Ct. 2491 (2001). The Due Process Clause's protections extend to all persons in the United States, including noncitizens, "whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* at 693.

## III.
## DISCUSSION

This case is not the first of its kind in this Court. In fact, as Respondents acknowledge, the Court has already considered the statutory and constitutional issues raised by Petitioner. *See Requejo Roman*, --F.Supp.3d--, 2026 WL 125681 (D.N.M. 2026); *see also Velasquez Salazar v. Dedos et al.*, --F.Supp.3d--, 2025 WL 2676729 (D.N.M. 2025); *Vega Uribe v. Noem*, No. 2:25-cv-01139, 2026 WL 127621 (D.N.M. Jan. 16, 2026); *Mendoza Rivas v. Noem*, No. 2:25-cv-01311 (D.N.M. Feb. 2, 2026); *Garcia Sanchez v. Noem*, No. 2:25-cv-01293 (D.N.M. Feb. 5, 2026); *Chen v. Unknown Warden*, No. 1:26-cv-00125 (D.N.M. Feb. 19, 2026); *Castellanos Haro v. Noem*, No. 2:26-cv-00175 (D.N.M. Feb. 26, 2026). The facts here are not materially different than those the Court analyzed in previous cases. Accordingly, the Court's conclusion is the same.

Following this Court's decisions in *Requejo Roman* and others, as well as the decisions of the vast majority of other federal courts who have analyzed this issue, the Court holds that

noncitizens already present in the United States who entered without inspection are subject to discretionary detention under 8 U.S.C. § 1226 and are entitled to a bond hearing. Petitioner, who entered the country without inspection approximately twenty-six years ago and has resided here ever since, is properly detained pursuant to § 1226 and therefore entitled to a bond hearing. Respondents' misclassification of Petitioner under § 1225 and the resultant denial of a bond hearing deprived Petitioner of his right to due process.

Petitioner requests that this Court order his release because he was previously released from immigration custody on bond. Doc. 20 ¶ 56. However, neither Petitioner's briefing nor Respondents' briefing, which includes Petitioner's Record of Inadmissible/Deportable Alien, indicate that Petitioner was ever released on bond. Accordingly, based on the facts before it, the Court finds that a bond hearing, rather than release, is the appropriate remedy. To ensure Petitioner's due process rights are protected going forward, the factors laid out in *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893 (1976), favor shifting the burden of proof to the Government in any future bond hearing.[4] For a detailed account of the Court's reasoning relevant to its decision, see *Requejo Roman*, --F. Supp. 3d --, 2026 WL 125681.

**IV.**
**CONCLUSION**

For the reasons stated above, and articulated in greater detail in *Requejo Roman*, Petitioner's Amended Petition for Writ of Habeas Corpus (Doc. 20) is **GRANTED IN PART**.

**IT IS THEREFORE ORDERED** that Respondents provide Petitioner an individualized bond hearing before a neutral IJ within **seven (7) days** of entry of this Order. If Petitioner does not receive such a hearing on or before Friday, April 3, 2026, he shall be immediately released. At the

---

[4] The Court does not find Respondents' brief argument against shifting the burden persuasive.

bond hearing, the Government shall bear the burden of proving, by clear and convincing evidence, that Petitioner is a flight risk and/or a danger to the community in order to justify continued detention. The assigned IJ is hereby ordered not to deny bond based solely on a lack of jurisdiction under the Board of Immigration Appeals' decision in *Matter of Hurtado*.

**IT IS FURTHER ORDERED** that the parties submit a joint status report to the Court no later than Friday, April 3, 2026, confirming whether a bond hearing was held and the result of said hearing.

**IT IS SO ORDERED.**

_____
HONORABLE DAVID HERRERA URIAS
UNITED STATES DISTRICT JUDGE

7